### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| JULIE T. HO, ) | NO. 15-35338 |
| ) | |
| Debtor ) | |
| ) | Chapter 11 |
| ) | |
| ) | Honorable Judge Carol A. Doyle |

### AMENDED PLAN OF REORGANIZATION

JULIE T. HO, debtor and debtor-in-possession, by and through her attorneys, Paul M. Bach and Penelope N. Bach of Bach Law Offices, proposes the following Amended Plan of Reorganization in accordance with Chapter 11 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement for a discussion of the Debtor's history, business and operations, risk factors and other related matters. The Disclosure Statement also provides a summary of the Plan.

### PREAMBLE

The Debtor filed her voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on October 16, 2015. The Debtor has operated her businesses of Rental Real Estate, Skippy's Gyros II and managed her financial affairs as debtor-in-possession since the inception of this reorganization case pursuant to Sections 1101, 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed to serve in this Chapter 11 case.

The Debtor is the proponent of this Plan as well as the Disbursing Agent. This Plan provides for distributions to the holders of allowed claims from the operation of her Rental Real

Estate and Skippy's Gyros II.

As stated in detail below, the Debtor owns three improved parcels of real estate. Approximately forty percent (40%) of the creditors' claims relate to the real estate ($924,804.93). The Debtor also has one priority claim owed to the Illinois Department of Revenue in the amount of $48,433.16. The remaining unsecured claims total the amount of $1,379,179.78 which includes Advocate Home Health Services ($1,900.00), American Express ($3,626.00), Capital One Bank (USA), N.A. ($8,893.37), City of Chicago ($1,550.40), Discovery Bank (1,706.33), Illinois Department of Revenue ($16,011.20), Internal Revenue Service ($3,500.00), Spark Energy ($855.00), and Urban Partnership Bank (928,137.48), Dawn Truong ($28,000.00), Diep Truong ($80,000.00 and $30,000.00), Hieu Truong ($225,000.00), Loan Truong ($10,000.00), and Paul Scandio ($40,000.00).

The Debtor is reorganizing her affairs in this case to allow for payments to her creditors over a period of time that will pay full balances to her secured and priority creditors and to allow for payments to unsecured creditors over a period of time that will pay unsecured creditors the liquidated value of the Debtor's assets ($237,992.99) . Upon confirmation of this Amended Plan, the Debtor's family will transfer the amount of $211,662.95 into the Debtor in Possession Account in order to payoff all unsecured creditors in accordance with this Plan. A summary of the Plan provisions is as follows:

1. JPMorgan Chase Bank, NA ("Chase") - 1902 W. Wabansia, Chicago, Illinois: Debtor will recast and restructure the secured claim of Chase by paying the full balance of $387,814.36 over 30 years at 5% interest. ($2,081.87/month plus escrow of $754.18)

2. Citimortgage ("Citi") – 1904 W. Wabansia, Chicago, Illinois: Debtor will recast

and restructure the secured claim of Chase by paying the full balance of $303,216.47 over 30 years at 4.625% interest resulting in principal and interest payments of $1,558.96 per month plus escrow of $741.70 per month = $2,300.66.

3. Fifth Third Bank ("FTB") – 2450 W. Courtland, Chicago, Illinois: Debtor will recast and restructure the secured claim of Chase by paying the full balance of $234,147.74 over 30 years at 6.5% interest. ($1,479.97/month)

4. Illinois Department of Revenue ("IDOR") – Priority Claim: Debtor will pay the priority claim to IDOR in full within 60 days of the effective date from funds given by Debtor's family members.

5. General Unsecured Creditors will receive a pro-rata share (13.74%) of $189,559.83 remaining from the funds tendered by Debtor's family members. The payments to unsecured creditors will be made within 60 days of the effective date.

6. Upon completion of payments to Priority and Unsecured Creditors as listed in the Plan of Reorganization, the Debtor will be entitled to a seek Discharge

## ARTICLE I DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

1.1   **1902 Wabansia Property** shall mean the improved real property located at 1902 W. Wabansia, Chicago Illinois and secured by the valid first priority mortgage of Chase.

1.2   **1904 Wabansia Property** shall mean the improved real property located at 1902 W. Wabansia, Chicago Illinois and secured by the valid first priority

mortgage of Citi.

1.3 **2450 Courtland Property** shall mean the improved real property located at 2450 W Courtland, Chicago, Illinois and secured by the valid first priority mortgage of FTB.

1.4 **Administrative Expense** shall mean a cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with applicable provisions of the Bankruptcy Code.

1.5 **Allowed Claim** shall mean a claim is one or more of the following: (i) a proof of claim which is filed within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent, or (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

1.6 **Allowed Interest** shall mean an "Interest" (as defined below) (i) proof of which has been filed within the time fixed by the Bankruptcy Rules or within the time fixed by the Bankruptcy Court; or (ii) that has been scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court; and (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

1.7 **Bankruptcy Code** shall mean Title 11 of the United States Code, 11 U.S.C. §§

101 *et seq.*, as amended from time to time.

1.8 **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

1.9 **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure as prescribed by the Supreme Court of the United States.

1.10 **Chapter 11** shall mean Chapter 11 of the Bankruptcy Code.

1.11 **Chapter 11 Case** shall mean the chapter 11 case commenced under Chapter 11 by the Debtor on the Petition Date, styled *In re Julie T. Ho*, Case No. 15-35338, and currently pending in the Bankruptcy Court.

1.12 **Claim** shall mean "claim" as defined in section 101(5) of the Bankruptcy Code

1.13 **Confirmation** shall mean the entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.14 **Debtor** or **Debtor in Possession** shall mean Julie T. Ho

1.15 **Debtor's Business** shall mean collectively the rental real estate and Skippy's Gyro's II.

1.16 **Effective Date** shall mean thirty (30) days following the entry of a Final Order confirming this Plan.

1.17 **Final Order** shall mean (a) an order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for

which an appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

1.18    **Late Filed Claims** shall mean claim for which the claimant filed a proof of claim after the deadline set by the Court for filing proofs of claim.

1.19    **Month** shall mean a calendar month, including the month in which a date or event occurs.

1.20    **Plan** shall mean this Plan of Reorganization including any amendments or modifications thereto.

1.21    **Pro-rata** shall mean with respect to any distribution on account of any claim or matter, in the same proportion as the amount of such claim or matter bears to the aggregate amount of all claims or matters of its class.  Unless otherwise defined, the words and phrases used herein shall have the meanings ascribed in the Bankruptcy Code and in the Bankruptcy Rules.

1.22    **Rental Real Estate** shall mean collectively the 1902 Wabansia Property, 1904 Wabansia Property and Courtland Property.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    Allowed Claims against and Allowed Interests in the Debtor in this estate shall

be fixed and determined as of the Petition Date and are classified as follows:

    2.1.1    <u>Unclassified Claims</u>

        a.    Administrative Expenses – Claims arising post-petition

    2.1.2    <u>Classified Claims</u>

        a.    Class 1 – Impaired Secured Claim of Chase as to 1902 Wabansia Property.

        b.    Class 2 – Impaired Secured Claim of Citi as to the 1904 Wabansia Property.

        c.    Class 3 – Impaired Secured Claim of FTB as to the 2450 Courtland Property.

        d.    Class 4 – Priority Claim of Illinois Department of Revenue. Class 5 – Impaired Unsecured Non-Priority Claims payment in the total amount of $189,559.83. (13.74%)

    2.2    <u>Resolution of Disputes</u>: Disputes regarding the proper classification of Claims shall be resolved pursuant to the procedures established in the Bankruptcy Code, the Rules and other applicable laws. The Court shall have exclusive jurisdiction over disputes concerning the classification of claims. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan.

    2.3    A Claim or Interest is classified in a particular Class only to extent that the Claim or Interest qualifies within the description of that Class.

    2.4    <u>Distributions of Disputed Claims</u>: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an allowed Claim belongs. Such payments and distributions shall be made as soon as practicable

after the date that the order or judgment allowing such Claim is a Final Order.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

### 3.1    TREATMENT OF UNIMPAIRED CLAIMS

The following classes(es) are unimpaired by the Plan in accordance with Section 1124 of the Bankruptcy Code or are not required to be classified in this Plan of Reorganization under provisions of the Bankruptcy Code

#### i.    Administrative Expenses.

These claimants represent claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash or as otherwise agreed. Payment of Professional Fees shall be subject to the provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due thereafter. The source of payment for these amounts will be the Debtor's income from operations and from employment. The Debtor expects Administrative Claims will be approximately $40,000.00 as of the Effective date.

### 3.2    TREATMENT OF IMPAIRED CLAIMS

The claims in the Classes listed below are impaired by the Plan:

#### A.    ALLOWED SECURED CLAIMS THAT ARE IMPAIRED

Claimants together include each Allowed Secured Claim held by a Creditor that is secured by one or more of the Debtor's Assets and is not disputed, contingent or unliquidated and allowed as of the effective date. Each creditor shall be paid as stated in the detail under each claim.

##### i.    Class 1- Secured Claim of Chase

JPMorgan Chase Bank, NA as to the 1902 Wabansia Property, Chicago, Illinois. Chase asserts in its Proof of Claim (Number 8) that it holds a perfected first mortgage on the real estate commonly known as 1902 W. Wabansia, Chicago, Illinois in the amount of $387,814.36. The claim of Chase is fully secured in the amount of $387,814.36 and will be paid as follows:

The secured claim of Chase in the amount of $387,814.36 shall be combined

recast and restructured (the "Chase Restructured Promissory Note"). The Chase Restructured Promissory Note shall be in the amount of $387,814.36 at the rate of 5% for thirty years. The Debtor will pay Chase the amount of $2,806.05 per month payable on the 1st of the month until paid in full (thirty years) beginning the month following the effective date. This payment represents a payment of $2,081.87 in principal and interest and $754.18 in escrow. The escrow payment is subject to change pursuant to the terms of the original contract entered into by the parties. Creditor shall continue to escrow taxes and insurance on the property.

The Chase Restructured Promissory Note may be prepaid without penalty. Once Chase's secured claim has been paid, in full, Chase shall cause the alleged security interests to be released and any other loan documentation, to be cancelled and surrendered as satisfied. Chase's secured claim is impaired under the Plan.

Any term in the original Note and Mortgage not modified by the terms above shall remain in full force and effect.

### ii. **Class 2 - Secured Claim of Citi**

Citimortgage as to the 1904 Wabansia Property, Chicago, Illinois. Citi asserts in its Proof of Claim (Number 9) that it holds a perfected first mortgage on the real estate commonly known as 1904 W. Wabansia, Chicago, Illinois in the amount of $303,216.47. The claim of Citi is fully secured in the amount of $303,216.47 and will be paid as follows:

The secured claim of Citi in the amount of $303,216.47 shall be combined recast and restructured (the "Citi Restructured Promissory Note"). The Citi Restructured Promissory Note shall be in the amount of $303,216.47 at the rate of 4.625% for thirty years. The Debtor will pay Citi the amount of $2,300.66 which includes principal and interest payments of $1,558.96 a month plus escrow of $741.70 per month payable on the 1st of the month until paid in full (thirty years) beginning the month following the effective date. The escrow payment is subject to change pursuant to the terms of the original contract entered into by the parties. Creditor shall continue to escrow taxes and insurance on the property.

The Citi Restructured Promissory Note may be prepaid without penalty. Once Citi's secured claim has been paid, in full, Citi shall cause the alleged security interests to be released and any other loan documentation, to be cancelled and surrendered as satisfied. Citi's secured claim is impaired under the Plan.

Any term in the original Note and Mortgage not modified by the terms above shall remain in full force and effect.

### iii. **Class 3 - Secured Claim of FTB**

Fifth Third Bank as to the 2450 Courtland, Chicago, Illinois. FTB asserts in its

Proof of Claim (Number 1) that it holds a perfected first mortgage on the real estate commonly known as 2450 W. Courtland, Chicago, Illinois in the amount of $234,147.74. The claim of FTB is fully secured in the amount of $234,147.74 and will be paid as follows:

The secured claim of FTB in the amount of $234,147.74 shall be combined recast and restructured (the "FTB Restructured Promissory Note"). The FTB Restructured Promissory Note shall be in the amount of $234,147.74 at the rate of 6.5% for thirty years. The Debtor will pay FTB the amount of $2,607.61 which includes principal and interest payments of $1,479.97 a month plus escrow of $1,127.64 per month payable on the 1st of the month until paid in full (thirty years) beginning the month following the effective date. The escrow payment is subject to change pursuant to the terms of the original contract entered into by the parties. Creditor shall continue to escrow taxes and insurance on the property.

The FTB Restructured Promissory Note may be prepaid without penalty. Once FTB's secured claim has been paid, in full, FTB shall cause the alleged security interests to be released and any other loan documentation, to be cancelled and surrendered as satisfied. FTB's secured claim is impaired under the Plan.

Any term in the original Note and Mortgage not modified by the terms above shall remain in full force and effect

    iv. **Class 4 - Priority Claim of IDOR**

IDOR asserts in its Proof of Claim 3 that Debtor owes back taxes in the amount of $64,444.36. The Debtor will treat the priority portion of $48,433.16 as Class four of this Plan. IDOR will be paid the amount of $48,433.16 within 60 days of the effective date. The unsecured portion of IDOR's Proof of Claim 3 shall be treated under Class 5 – general unsecured creditors.

**B.**    **ALLOWED GENERAL UNSECURED CLAIMS**

    **i.**    **Class 5 - Allowed General Unsecured Claims**:

There are sixteen creditors that make up the general unsecured claims. The below chart breaks down the treatment of general unsecured creditors:

| Creditor | Amount of Allowed Claim | Total Payment | Percent of total payment |
|---|---|---|---|
| Advocate Home Health Services | $ 1,900.00 | $ 261.14 | 0.14% |
| American Express | $ 3,626.00 | $ 498.37 | 0.26% |
| Capital One Bank (USA), N.A. | $ 8,893.37 | $ 1,222.34 | 0.64% |
| City of Chicago | $ 1,550.40 | $ 213.09 | 0.11% |
| Dawn Troung | $ 28,000.00 | $ 3,848.43 | 2.03% |
| Diep Troung | $ 80,000.00 | $ 10,995.51 | 5.80% |
| Diep Troung | $ 30,000.00 | $ 4,123.32 | 2.18% |
| Discovery Bank | $ 1,706.33 | $ 234.52 | 0.12% |
| Hieu Troung | $ 225,000.00 | $ 30,924.87 | 16.31% |
| Illinois Department of Revenue | $ 16,011.20 | $ 2,200.64 | 1.16% |
| Internal Revenue Service | $ 3,500.00 | $ 481.05 | 0.25% |
| Loan Troung | $ 10,000.00 | $ 1,374.44 | 0.73% |
| Paul Scandio | $ 40,000.00 | $ 5,497.76 | 2.90% |
| Spark Energy | $ 855.00 | $ 117.51 | 0.06% |
| Urban Partnership Bank | $ 928,137.48 | $ 127,566.82 | 67.30% |
| **Total** | **$ 1,379,179.78** | **$ 189,559.83** | **100.00%** |

Debtor will pay these claims one lump sum payment 13.74% as listed above in the chart. Should the debtor sell either parcel of real estate, the proceeds of that sale will be distributed pro-rata the

General Unsecured Creditors listed above.

## ARTICLE IV IMPLEMENTATION OF PLAN

4.1     All of the assets of the Debtor and this estate shall vest in the Debtor upon Confirmation of the Plan subject to the terms and conditions of this Plan.

4.2     The Debtor shall be entitled to manage her affairs and operate her businesses without further Order of this Court subject to the terms and conditions of this Plan.

4.3     Upon Confirmation, the confirmed Plan shall become a binding agreement between the Debtor and her creditors, superseding all pre-petition obligations of the Debtor to her Creditors.  So long as Debtor acts in accordance with the Plan terms, Creditors shall have no right of action (including but not limited to proceeding with a foreclosure sale and other State Court rights) against Debtor to pursue Debtor for payment and Creditors are enjoined and prohibited from taking such action except as set forth in the Plan.   Any such action by a Creditor violating this paragraph shall give the Debtor a Cause of Action against such Creditor for Damages, which shall be determined just as Damages are computed and allowed for a Violation of the Automatic Stay/Discharge Injunction/Confirmation Order and/or violations of the Fair Debt Collection and Practices Act pursuant to 15 U.S.C. §1692, et seq.

4.4     This Plan is self-executing.  The Debtor shall not be required to execute any newly created documents to evidence the claims, liens or terms of repayment to the holder of any Allowed Claim, except for the Restructured Promissory Note and all other loan documents Byline requires related to the Restructured Promissory Note.  Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims and any liens that may support such Claims shall be deemed released and discharged, except for the liens

and encumbrances of Byline related to the Restructured Promissory Note.

## ARTICLE V

## EXECUTORY CONTRACTS

5.1  All executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned or rejected by the Debtor shall be deemed assumed by the Debtor as of the Confirmation of this Plan.

## ARTICLE VI

## COURT'S RETENTION OF JURISDICTION

6.1 The Bankruptcy Court shall retain jurisdiction after Confirmation to:

    (i)     consider applications for fees and allowances for professional persons;

    (ii)    supervise the implementation and enforce the terms of this Plan;

    (iii)   consider objections to claims against the estate of the Debtor and to modify the Plan based on the outcome of objections;

    (iv)   hear and conclude all adversary proceedings or contested matters;

    (v)    resolve disputes regarding interpretation of this Plan;

    (vi)   fix expenses of administration;

    (vii)  enter Orders to further consummation of the Plan;

    (viii) approve modification of the Plan upon motions brought before the Bankruptcy Court;

    (ix)   consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation;

    (x)    hear and conclude any adversary proceedings and other matters relating or

    giving rise to litigation recoveries;

(xi)    enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary; and

(xii)    enter an Order concluding and terminating this Chapter 11 Case.

## ARTICLE VII

## CONFIRMATION OF PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE

7.1 The Debtor reserves the right, pursuant to Section 1129(b) of the Bankruptcy Code, to request the Bankruptcy Court to confirm the Plan if all applicable requirements of Section 1129 (a) of the Bankruptcy Code, other than Section 1129(a) (8), are met.

## ARTICLE VIII
## UNCLAIMED PROPERTY

8.1 In the event that any distribution made by the Debtor under this Plan remains unclaimed one hundred (180) days after such distribution is made, this distribution will become property of the Debtor and shall not be recouped in subsequent distributions. After expiration of the one hundred (180) day period set forth herein, the claimant whose funds remain unclaimed shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE IX
## INVALIDATION OF LIENS AND DISCHARGE

9.1 The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan. The distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all Claims against any of the assets or properties of the Debtor. Unless otherwise specifically provided to the contrary herein

or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any Claim against the Debtor that arose prior to the Petition Date or during the Chapter 11 Case and shall not retain any pre-petition liens except as allowed by this Chapter 11 Plan.

## ARTICLE X
## INTEREST AND PENALTIES

10.1 Except as otherwise provided herein, or required by the Bankruptcy Code, no default interest or penalties accruing on or after the Petition Date, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

## ARTICLE XI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

11.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor have scheduled such claim as disputed, contingent, or unliquidated.

11.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

11.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XII
## RESERVATION OF RIGHTS

12.01. Reservation of Rights: Nothing herein is intended to, does or shall be deemed in any manner to waive, limit, impair, or restrict the ability of Debtor to protect and preserve her rights, remedies, and interests, so long as such actions are not inconsistent with the Debtor's obligations under the Chapter 11 Plan or any provision the United States bankruptcy Code.

## ARTICLE XIII
## DISCHARGE

13.01. Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under the or as otherwise provided in § 1141(d)(5) of the Code.

Julie T. Ho,

By: /s/Penelope N. Bach
Penelope N. Bach, one of her attorneys

DEBTOR'S COUNSEL:
Paul M. Bach
Penelope N. Bach
Bach Law Offices
PO Box 1285
Northbrook, Illinois 60062
(847) 564 0808